```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,      )
                               )
               Plaintiff,      )        4:08CR3174
                               )
     v.                        )
                               )
ILDEFONSO MONTOYA-VASQUEZ,     )        MEMORANDUM AND ORDER
                               )
               Defendant.      )
                               )
```

This matter is before the court on the government's motion for detention. A detention hearing was held before me on January 9, 2009, evidence was adduced, and counsel were heard in argument. The matter was taken under advisement.

FACTS

Defendant stands charged in a two-count indictment. Count I alleges a violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2), illegal alien in possession of a firearm. The second count seeks forfeiture of the firearm involved. The possible sentence on Count I of the indictment is zero to ten years in prison and/or a fine of up to $250,000, up to a three-year term of supervised release following any incarceration, and a $100 special assessment. There is no statutory minimum sentence.

Although defendant's counsel argued defendant was not "illegally" in the United States at the time alleged in the indictment because he had been issued an Employment Authorization Document, deciding such a defense is beyond the purview of a detention hearing, and I do not consider it. The defendant is presumed innocent.

The pretrial services reports state that the defendant is 41 years old and was born in Mexico. He came to the United States in 1986, but returned to Mexico after two years. He re-entered the United States in 1989, where he has remained since. He has lived in Lincoln, Nebraska for five years. He resides here with his parents, his wife of twenty years, their five children who were all born in the United States, and two adult brothers. They reside in a house owned by defendant's father, subject to a mortgage. Defendant has lived at the same address for three or four years. He has three other siblings, two of whom also reside in Lincoln. His father is employed in Lincoln and is applying for permanent resident alien status; he has no criminal record. Defendant's father stated to the pretrial services officer that he is willing to serve as a third-party custodian of the defendant, and would be willing to install a separate phone line for electronic monitoring if necessary to do so.

Defendant has been continuously employed at the Kawasaki plant in Lincoln for the past four years. Although he recently suffered an on-the-job injury and has a worker's compensation claim pending, he remains working at the plant in another capacity pending his recovery. He assists with house payments, but has no substantial assets himself, and his only debt is approximately $1,000.00. He has a 9th grade education in Mexico. Defendant's health is good with the exception of being diabetic. He does not use alcohol or drugs.

The report also states that defendant has been contacted by law enforcement officers only two times before the present charges, both for misdemeanor driving offenses for which he received fines. Both of those contacts were in 2008, and so far

as can be determined from the report, both were totally unrelated to the pending charges or to each other.

The Bureau of Immigration and Customs Enforcement ("ICE") has filed a detainer against the defendant with the United States Marshals Service.  Operating procedure is that if this court should release the defendant on conditions, he would be released to the custody of ICE.  He would then be taken before an Immigration Judge to determine his status and whether he is eligible for a release on bond from ICE custody.  According to the testimony of ICE Deportation Officer Michael Becker, the current caseload of the agency would cause a delay of approximately four weeks before a person in the defendant's position would typically be brought before an Immigration Judge.  After determining whether the alien should be granted release on bond, the alien's case would ultimately be heard and determined by the Immigration Judge, who would rule on the issue of the alien's status in the United States, including the issue of possible removal from the United States.  If the Immigration Judge rules against the alien and orders removal, ICE carries out the removal.  However, the alien may appeal the judge's ruling to the Board of Immigration Appeals.

According to Officer Becker, defendant has previously filed an application for cancellation of removal, and that application is presently pending before ICE.  Defendant's "A-File" with ICE shows that defendant is eligible for cancellation of removal; that is, the record shows no criminal convictions, family members who are citizens, and more than ten years continuous presence in the United States.  See 8 U.S.C. § 1229b(b).  Nothing in his "A-File" renders the defendant automatically removable or excludable

3

under the Immigration and Nationality Act, nor under the Illegal Immigration Reform and Immigration Responsibility Act of 1996.

According to Officer Becker, defendant is eligible for a bond, pending a hearing on his application for cancellation of removal.  A hearing on that application, previously scheduled for March, 2009, has apparently been continued indefinitely by an Immigration Judge at the request of ICE attorneys.[1]  The ICE Immigration Judge is not permitted to issue an advisory ruling on the defendant's request for release on bond; that is, the request for release on bond cannot be filed until the defendant has been physically taken into ICE custody.  Defendant can request rescheduling of the hearing on his request for cancellation of removal.  According to Officer Becker, if successful in obtaining a cancellation of removal, the defendant would then be granted permanent resident alien status.  If the request for cancellation is not granted, the defendant may appeal that decision.  It is the pattern and practice of the ICE office not to "grant benefits"[2] to an alien against whom felony criminal charges are pending, and instead, to request continuances of any hearings on applications for cancellation of removal filed by such aliens.  The decision maker on such requests for continuances is the Immigration Judge, but such requests are routinely granted, as has apparently been done in defendant's case.

---

[1] There was no evidence on whether defendant was given any notice of ICE's request and an opportunity to contest it.

[2] The testimony was unclear as to exactly what "granting benefits" may mean, but I infer that it would include either agreeing to or not opposing the holding of a hearing on the alien's pending request for cancellation of removal.

According to Officer Becker, defendant has been granted an Employment Authorization Document by the United States Citizenship and Immigration Services ("USCIS") under the authority of 8 CFR § 274a.12(c)(10) (Aliens who have filed an application for cancellation of removal are authorized to be employed during the pendency of such application). That work permit remains in effect. Therefore, he is legally employed in the United States.

ARGUMENTS

The government does not argue that the release of the defendant on conditions would pose a risk of danger to another person or the community at large. Rather, the government argues that the defendant poses a risk of flight. It points out that if released by this court on conditions, defendant would be immediately taken into custody by ICE. Although technically eligible for bond, it is unlikely that he would be granted bond, and thus, it is probable that he would be removed from the United States prior to this case reaching any conclusion. It also points out that ICE does not "hold" aliens for prosecution by other authorities. It contends that even if defendant were to be released on bond by ICE, there is every reason to believe he would abscond rather than stay in this jurisdiction to face trial, after which he may be sentenced to a period of incarceration and then deported afterward, anyway. In short, the government argues that for this defendant, all roads lead to Mexico.

Defendant argues that he has every reason to stay in the United States, and continue to live and work in Lincoln, Nebraska. In fact, defendant argues that his having five

5

children here who are U.S. citizens provides five strong incentives for him to stay, not to mention his other familial ties to Lincoln.  Defendant also points to his work history, lack of criminal history, and his continuously living in the United States since 1989 as evidence that he is a stable and contributing member of this society.  Defendant also argues that his having been issued a valid Employment Authorization Document arguably provides a defense to the government's charges against him,[3] which, if successful, would result in his being granted permanent resident alien status in the United States.  He also argues that he is eligible to be released from ICE custody on a bond, and despite the "practice" of ICE in opposing such releases, that decision rests not with ICE administrators or deportation officers, but rather, with an Immigration Judge.

## DISCUSSION

The Bail Reform Act favors the release of a defendant, and on the subject of nonappearance, says, "The judicial officer shall order the pretrial release of the [defendant on an appearance bond] . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person . . . ."  18 U.S.C. § 3142(b).  In that event, the court is required to release the defendant on the least restrictive of conditions enumerated in Section 3142(c)(1)(B).  The government bears the burden to show that there is no condition or combination of conditions that would "reasonably

---

[3] As noted above, deciding whether such would in fact provide a legal defense in this case is not germane to the issue presently before the court; I mention it only for the effect that that *possibility* might have on the defendant's subjective incentives to stay in Lincoln.

assure" the defendant's appearance at trial or the safety of the community.  18 U.S.C. 3142(c)(f).  With respect to failure to appear, such a showing must be made by a preponderance of evidence; the government's burden to show danger to the community is by clear and convincing evidence.  United States v. Orta, 760 F.2d 887 (8th Cir. 1985).  The Act specifies the factors to be considered by the court as (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and whether at the time of the current offense or arrest, the person was on a conditional release; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S. C. § 3142(g)(1)-(4).  There is no "presumption" arising from the nature of the charges in this case that the defendant should be detained.  18 U.S.C. 3142(e).  Alien status is not a listed factor or criterion.

The Bail Reform Act does not permit this court to speculate on the "risk" that a defendant would not appear in this court due to his being removed from this country by the same government that is prosecuting him.  If any release order is entered in this court, no matter what those conditions, defendant will be released by the U.S. Marshals Service to the ICE detainer and taken into custody by ICE.  It will then be up to an Immigration

7

Judge to determine whether defendant is removed from the United States. The "risk" of an order of removal is one over which this court has no control, and whether the hearing on defendant's request for cancellation of removal is rescheduled, and if so, the merit of such request, are issues that are simply not for this court's review.

There is no predicting the actions of ICE because the defendant is not in its physical custody, and the ICE Immigration Judge will not address his eligibility for bail until he is in its physical custody. In other words, I cannot address the risk of ICE removing the defendant from the United States without speculating about what the Immigration Judge may do. Speculation is not evidence, much less preponderating evidence.

In this case there clearly are conditions of release that could be fashioned which would "reasonably assure" that the defendant would not abscond. 18 U.S.C. § 3142(c)(1)(B). The evidence shows that his father has assets and defendant himself is employed, so at least a possibility of a monetary bond is present. In addition, the father is willing to serve as a third-party custodian and to install a separate telephone line to accommodate electronic monitoring. But for the ICE threat of removing him, he would absolutely be eligible for release, and similarly situated defendants without alien status and ICE detainers have routinely been released by this court. The Bail Reform Act's requirement that conditions be fashioned which would "reasonably assure"[4] the defendant's appearance in this court can clearly be met.

---

[4] It should be noted that the Act's provisions do not require a "guarantee." United States v. Orta, 760 F.2d at 889-90.

The real issue is whether the risk—-no matter what numerical probability that may be--of defendant's being removed from the United States by ICE is a risk of "nonappearance" cognizable under the Bail Reform Act.

18 U.S.C. § 3146 describes the penalties to be imposed on one who "fails to appear" as ordered. In doing so, it states,

> It is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and the person appeared or surrendered as soon as such circumstances ceased to exist.

18 U.S.C. §3146(c). See, United States v. Elliott 467 F.3d 690 (7th Cir. 2006) (defendant's failure to appear resulted from diabetic befuddlement and his failure to appreciate the obligation to appear). This position appears to reflect prior law:

> [B]ail need not be forfeited where performance is rendered impossible by act of God, or of the law, or of the obligee. United States v. Carolina Casualty Ins. Co., 237 F.2d 451, 452 (7th Cir. 1956); see also United States v. Egan, 394 F.2d 262, 265 (2d Cir. 1968); cf. United States v. Jones, 719 F.2d 110, 111 (5th Cir. 1983) (stating that "the government may not enforce the forfeiture of bond when the government itself has increased the risk or made impossible the exercise of the bail bondsman's right to arrest the individual and surrender him to authorities"). For instance, in Carolina Casualty, the court stated that the involuntary induction of the defendant into the army, or similar control exercised over

9

>        him by the government, could discharge the
>        bond obligation.  237 F.2d at 452-53, n.3.

U.S. v. Urquiza, 2006 WL 2691074 (E.D.Wis. 2006) (not reported in the Federal Supplement).

There is no reason to believe that "failure to appear" as used in section 3142 means something different from "failure to appear" as used in section 3146.  Thus, I conclude that "failure to appear" as used in the Bail Reform Act is limited to the risk that the defendant may flee or abscond, that is, that he would fail to appear by virtue of his own volition, actions and will.  If the government--through ICE or any other authority--prevents his appearance, he has not "failed" to appear.

If the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions.  Such a harsh result is nowhere expressed or even implied in the Bail Reform Act.  Instead, the Act simply requires temporary detention and the giving of notice by the court to immigration officials so they can investigate and determine whether they wish to pursue filing a detainer against the alien defendant.  18 U.S.C. § 3142(d)(1)(B).  If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not.

Further, had Congress barred aliens against whom immigration detainers are filed from eligibility for release on conditions, such action would raise serious Constitutional issues, not the least of which would be claims of excessive bail, violation of equal protection of the laws, and violation of the separation of

powers.  I conclude that the risk of removal by ICE, if cognizable at all under the Act, cannot be determinative of the question of a defendant's eligibility for release.

In light of the above considerations, if the risk of removal by ICE is cognizable at all, it would be only as one of many factors.  So considering that risk in this case, it does not foreclose this defendant from release on bail.  As noted above, the defendant's ties to the community, employment history, family ties, lack of criminal history, and lengthy residence in the United States and in Nebraska all combine to overcome the risk that he would "fail to appear" as that term is used in the Act.  While there can never be any "guarantees" in such a matter, conditions can be fashioned that will "reasonably assure" his appearance.  Thus, I do not consider the risk of removal by ICE to warrant detaining this defendant in the custody of U. S. Marshals until the trial of this case.

IT THEREFORE HEREBY IS ORDERED:

1.  The government's oral motion for detention is denied, and a separate order will be entered establishing conditions of release.

2.  The effective date of the order, however, will be delayed so as to permit the government to appeal.

DATED this 13th day of January, 2009.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge